IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENVILLE DIVISION

| | |
|---|---|
| Robert Presson, #20509-058, ) | Civil Action No.: 8:08-821-HFF-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| United States of America, U.S. ) | |
| Attorney General, and Federal Bureau ) | |
| of Prisons, ) | |
| ) | |
| Defendants. ) | |

The plaintiff, a federal prisoner proceeding *pro se*, seeks relief pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, for alleged medical malpractice by the defendant. This matter is before the Court on the defendants' motion for summary judgment. [Doc. 14.]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(e) & (f), D.S.C., all pretrial matters in cases involving *pro se* litigants or prisoners are referred to a United States Magistrate Judge for consideration.

## APPLICABLE LAW

**LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT**

The plaintiff brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the

pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A pro se complaint, "can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (U.S. 1976). A court may not construct the petitioner's legal arguments for him. *See Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

It is undisputed that the plaintiff has pled one claim pursuant to the Federal Tort Claims Act ("FTCA"). (See Compl. at 3-4; Mem. Resp. Summ. J. at 5-7.) The plaintiff appears to advance two bases of liability: (1) that the defendants delayed in having surgery on his broken leg and (2) that the defendants left the plaintiff's leg immobilized for eleven to twelve weeks in a cast, when the orthopedic surgeon ordered that it should be removed after three weeks. The plaintiff contends that both acts of negligence resulted in greater injuries than he would have otherwise suffered, specifically abnormal scar tissue and loss of flexion.

The FTCA provides a limited waiver of sovereign immunity that enables parties that are injured by an agent of the United States to obtain relief. The United States is the only proper defendant to a FTCA claim.[1] *Holmes v. Eddy*, 341 F.2d 477 (4th Cir. 1965) (holding that federal agencies cannot be sued under the FTCA); *see also* 28 U.S.C. § 1346(b) (conferring jurisdiction on courts for tort claims "against the United States").

Under the FTCA, federal courts are directed to determine liability based upon a consideration of relevant state law. Since the medical negligence allegedly occurred in South Carolina, the substantive law of South Carolina controls. *See United States v. Neustadt*, 366 U.S. 696, 706 n. 15 (1961). Accordingly, the claims relating to care provided should be evaluated in accordance with South Carolina tort law.[2]

---

[1] Accordingly, the Court agrees with the defendant that the U.S. Attorney General and the Bureau of Prisons are not proper parties to this case and should be dismissed.

[2] Under *lex loci delicti*, the applicable state substantive law is the law of the "place of the wrong." Courts have interpreted "the place of the wrong," for purposes of *lex loci delicti*, as the place where "the last event necessary to make an [actor] liable for an alleged

4

In South Carolina, a plaintiff alleging a medical malpractice claim must prove by a preponderance of the evidence the following:

> (a) The recognized and generally accepted standards, practices, and procedures in the community which would be exercised by competent physicians in the same speciality under similar circumstances;
>
> (b) that the physician or medical personnel negligently deviated from the generally accepted standards, practices, and procedures;
>
> (c) that such negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury; and
>
> (d) that the plaintiff was injured.

*Dumont v. United States*, 80 F.Supp.2d 576, 581 (D.S.C. 2000) (internal citations omitted). Furthermore, the plaintiff must establish by expert testimony both the "standard of care and the defendant's failure to conform to the required standard, unless the subject matter is of common knowledge or experience so that no special learning is needed to evaluate the defendant's conduct." *Martasin v. Hilton Head Health Sys. L.P.*, 613 S.E.2d 795, 799 (S.C. Ct. App. 2005) (*citing Gooding v. St. Francis Xavier Hosp.*, 487 S.E.2d 596, 599 (S.C. 1997)). "In addition to proving the defendant negligent, the plaintiff must also prove that the defendant's negligence was a proximate cause of the plaintiff's injury." *Carver v. Med. Soc'y of S.C.*, 334 S.E.2d 125, 127 (S.C. Ct. App. 1985). Furthermore, in South Carolina, the burden of proof in a medical malpractice case is entirely upon the plaintiff. *Dumont*, 80 F. Supp. 2d at 581.

In a medical malpractice case, a plaintiff must establish by expert testimony both the

---

tort takes place." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (*quoting Miller v. Holiday Inns, Inc.*, 436 F.Supp. 460, 462 (E.D. Va.1977)).

"standard of care and the defendant's failure to conform to the required standard, unless the subject matter is of common knowledge or experience so that no special learning is needed to evaluate the defendant's conduct." *Martasin v. Hilton Head Health System*, 364 S.C. 430 (S.C. Ct. App. 2005) (internal citations omitted). "In addition to proving the defendant negligent, the plaintiff must also prove that the defendant's negligence was a proximate cause of the plaintiff's injury." *Carver v. Med. Soc. of S.C.*, 334 S.E.2d 125, 127 (S.C. Ct. App. 1985).

It is undisputed that the plaintiff injured his left knee on March 24, 2007. The plaintiff was transported to a local hospital, that same day, for radiographs of his left leg and knee. (Def. Ex. 4 at 1-2.) The x-rays revealed a lateral tibial plateau fracture. *Id*. at 6. It is further undisputed that the plaintiff underwent surgery to repair his left leg, on April 5, 2007, approximately 11 days after the initial injury. *Id*. at 13-16.

The plaintiff's first basis of liability is that the defendants delayed in providing the necessary surgery for his leg. Specifically, he contends that after leaving the hospital on March 24, "the doctor advised the officer's transporting [him] that [he] would need surgery and casting done on his leg *by the following day*." (Pl. Resp. Summ. J. at 2.) Accordingly, the plaintiff has borrowed this alleged time prescription, as to the date of surgery, in order to establish the standard of care owed by the defendant. Because he has not produce evidence that such a representation was ever made in the first instance, his malpractice claim as to the delay must fail.

The hospital records clearly indicate that on March 24, 2007, he was expressly scheduled for a "[f]ollow up," in the office, on "Monday." (Def. Ex. 4 at 4.) There is no mention of surgery or the need for surgery on the following day. In accord with the doctor's order, the plaintiff was, in fact, seen on March 27, 2007, by a consultant Orthopedic Surgeon.

6

*Id*. at 9. At that point, it was recommended that the plaintiff would benefit from "open reduction and internal fixation." *Id*. Dr. F.H. Qureshi, the Orthopedic Surgeon, stated, "Arrangements will be made for this to be done in the near future. We will see him in the hospital for evaluation." *Id*. Not only did Dr. Qureshi fail to suggest that the plaintiff should have already had the surgical procedure but he did not express any exigency about having it performed within any prescribed time. *See id.*

The plaintiff, therefore, has produced no evidence to support his claim that the surgery was to have been done on March 25. And, no reasonable jury could conclude, on the evidence presented, that the examining doctors and physicians ever recommended such a deadline. Moreover, the surgery was, in fact, performed by April 5, hardly 11 days from the date of the injury. The medical evidence expressly indicates that such a time-line was in the appropriate and reasonable contemplation of the examining physicians. Accordingly, no jury would be justified in concluding that the defendant deviated from the standard of care the plaintiff seeks to borrow. He does not contend that a delay of 11 days from the time of the injury is, on its face, violative of any standard of care. Rather, as stated, he contends that a standard of care was established in the alleged order of the initial examining physician that he undergo surgery by March 25. Because there is no credible evidence that such an order was ever given, or should have ever been given, the plaintiff cannot establish a violation of any standard of care. Thus, his FTCA claim as to any delay in surgery must fail.

Next, the plaintiff contends that the defendant committed malpractice insofar as it did not allow him to have his cast removed in the three week time frame as recommended by the physician. The plaintiff contends that this failure resulted in "left knee stiffness (loss of flexion) and tissue fibrosis due to lack of blood flow, which made physical therapy impossible once the cast was removed." (Pl. Opp. Summ. J. at 4.) The defendants do not dispute that

7

the plaintiff suffered the onset of arthrofibrosis, which is the formation of abnormal scar tissue in the knee. (Berrios Decl. ¶ 31.) On June 29, 2007, the plaintiff underwent arthroscopic surgery to remove the abnormal scar tissue from the plaintiff's knee and to achieve further flexion. (Def. Ex. 4 at 42-44.) Subsequent to this surgery, the plaintiff began to undergo, and continues to participate in, physical therapy for his knee. *Id*. at 45-70. The defendant contends that the arthrofibrosis condition is a result of the initial surgery on the plaintiff's knee and not the prolonged casting, as alleged by the plaintiff.

It is undisputed between the parties that the target date for the removal of the plaintiff's cast, after surgery, was May 15, 2007, approximately 3 weeks of casting. (Def. Ex. 5 ¶ 27; Pl. Opp. Summ. J. at 3).) It is further undisputed that the plaintiff's initial cast was, in fact, removed after approximately 7 weeks.[3] (Berrios Decl. 5 ¶ 30; Ex. 4 at 27-28.) The plaintiff's argument, however, appears to rest on his allegation that the total time of casting was roughly "eleven (11) to twelve (12) weeks." (Pl. Opp. Summ. J. at 3.)

The Court was originally inclined to deny summary judgment as to this portion of the plaintiff's claim and grant him an opportunity to retain an expert witness as to the standard of care regarding his casting and any possible causality between extended casting and the onset of arthrofibrosis. But a closer look at the logic of the plaintiff's factual claims now recommends against it. Specifically, the plaintiff does not contend that his arthrofibrosis arose as a result of the initial 7 week casting period. It could not have by his own account.

The plaintiff expressly blames the condition on the cumulative immobilization of *11 to 12 weeks*, which he contends included a "***second casting***." (Pl. Opp. Summ. J. at 4

---

[3] The defendant represents that the delay between the target and the actual date of the removal was for the plaintiff's own benefit and as a result of the need to transfer him between facilities. While the justification for the delay might be relevant at trial, the Court does not find it dispositive of any particular issue here on summary judgment.

8

(emphasis added).) He argues that this total time, 11 to 12 weeks, was "five (5) weeks beyond the medically appropriate time frame for removal of a cast and the start of recovery." *Id*. This five-weeks accusation necessarily rests on the plaintiff's implicit concession, also recognized by the defendant, that it is appropriate for a cast to be left in place for approximately 6-7 weeks after surgery. (Berrios Decl. ¶ 30.) Otherwise, the plaintiff would have simply alleged that any day longer than 3 weeks was violative of the standard of care. Instead, the only reasonable interpretation of his claim is that he believes the time *after* 7 weeks was the cause of his arthrofibrosis.

This factual premise of the plaintiff's claim is problematic for a number of reasons. First, as far as the Court can tell, there was no second casting. The medical records expressly indicate that the cast was taken off on or about May 23 or 24, 2007; that staples were removed; and that the plaintiff began therapy. (Def. Ex. 4 at 27-28.) The plaintiff does not dispute the credibility of these records. And, the Court's attention has not been directed to any evidence that suggests that a cast was then reapplied as a result of the plaintiff's initial surgery. Accordingly, the plaintiff has not presented any evidence that his leg was in a cast any longer than the 7 weeks that he necessarily concedes was an appropriate amount of time for his knee to be casted. Moreover, without evidence of a second casting, he certainly cannot demonstrate any cumulative casting of 11 or 12 weeks, as alleged. Accordingly, there is no need for any medical expert to pontificate on the effects of a medical decision, which the evidence indicates, was never made. In other words, a medical experts opinion as to the effects of 11 or 12 weeks of casting would be irrelevant if there is no evidence that he was casted that long. The Court is unaware of any.

But, even if the plaintiff was casted a second time and for the period alleged, his claim still must fail. Namely, the plaintiff has again tied the defendant's liability to the orders of the

9

treating physician. As stated, the plaintiff believes that the defendant was ordered to have his cast removed after 3 weeks. The plaintiff argues that the defendant violated that standard of care, as established by the order, insofar as he went a combined 11 or 12 weeks in the cast. The intervening cast removal on May 25, 2007, however, necessarily breaks the chain of causation from which any reasonable jury could hold the defendant liable. Specifically, it is undisputed that the cast was removed on May 25, approximately 7 weeks from the surgery. The only question is whether one was placed back on the plaintiff. But, to the extent a second cast was, in fact, applied, it would have been the decision of the treating physician, Dr. Reginald Hall, and not the defendant. (See generally Def. Ex. 4 at 27, 29.) Dr. Hall as of May 2007 would have been in the best position to determine whether the casting to that date had caused any additional problems and whether additional casting would cause new or further complications. To the extent a second cast was actually employed, it seems that Dr. Hall necessarily arrived at the conclusion that it had not and that it would not. Otherwise, it seems reasonable that he would not have recommended the alleged second cast or would have prescribed some other course. Regardless, by the plaintiff's own admission and the evidence of record, it would have been Dr. Hall's, and not the defendant's, decision to cast the plaintiff 11 or 12 weeks. Accordingly, no reasonable jury could conclude that the defendant violated any orders of the treating physician in regards to casting for "5 weeks" too long. Such casting, beyond the 7 weeks that both parties agree is medically appropriate, would have been exclusively the decision of Dr. Hall. The plaintiff makes no allegation that the defendant recasted him.

Accordingly, there is no evidence that he was casted a total of 12 weeks. But even if there were, the record indicates that such a period of time was the result of a decision made by the treating physician and not for any delay of the defendant.

10

The plaintiff has not created any issues of fact regarding the two bases for his FTCA claim.  As discussed, his failure to do so is in no way related to lack of a medical expert testimony.  His claims have failed as a matter of factual and legal insufficiency.

## CONCLUSION

Wherefore, based on the foregoing, it is RECOMMENDED that the defendants' motion for summary judgment [Doc. 14] should be GRANTED.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

February 2, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).